1   Sara B. Brody (SBN 130222)
    sbrody@sidley.com
2   Jaime A. Bartlett (SBN 251825)
    jbartlett@sidley.com
3   Madison J. Ferraro (SBN 339624)
    madison.ferraro@sidley.com
4   SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
5   San Francisco, CA 94104
    Telephone: +1 415 772 1200
6   Facsimile: +1 415 772 7400

7   *Attorneys for Defendants*
    *Skyworks Solutions, Inc., Liam K. Griffin,*
8   *and Kris Sennesael*

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12            SOUTHERN DIVISION AT SANTA ANA

13  | IN RE SKYWORKS SOLUTIONS, INC. | Case No. 8:25-cv-00411-DOC-JDE |
    | SECURITIES LITIGATION | |

14  **DEFENDANTS' NOTICE OF**
    **MOTION AND MOTION TO**
15  **DISMISS THE CONSOLIDATED**
    **CLASS ACTION COMPLAINT;**
16  **MEMORANDUM OF POINTS AND**
    **AUTHORITIES IN SUPPORT**
17  **THEREOF**

18  *[Filed concurrently with [Proposed]*
    *Order; Declaration of Jaime A. Bartlett;*
19  *Request for Judicial Notice and*
    *Incorporation by Reference; and*
20  *[Proposed] Order]*

21  Assigned to: Hon. David O. Carter

22  Date: March 20, 2026
    Time: 8:30 a.m.
23  Place: Courtroom 10A

24

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:25-CV-00411-DOC-JDE

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 20, 2026 at 8:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 10A of the above entitled Court, located at 411 West Fourth Street, Santa Ana, CA, 92701, before the Honorable David O. Carter, Defendants Skyworks Solutions, Inc. ("Skyworks" or the "Company"), Liam K. Griffin, and Kris Sennesael (collectively, "Defendants") hereby do move the Court for an order dismissing the Consolidated Class Action Complaint ("CC") filed by Lead Plaintiff Louisiana Sheriffs' Pension & Relief Fund ("Plaintiff"). ECF 59.

Plaintiff asserts a claim against Defendants under Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b). Plaintiff fails, however, to plead that claim with the particularity required by the Private Securities Litigation Reform Act ("PSLRA"). Specifically, Plaintiff has (1) failed to plead with particularity that Defendants made any materially false or misleading statement; and (2) failed to establish a strong inference of intentional fraud.

Plaintiff also asserts control person claims against Defendants Griffin and Sennesael under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t. This claim fails because Plaintiff has not established a primary violation under Section 10(b).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Consideration of Documents Incorporated by Reference, the Declaration of Jaime A. Bartlett in support thereof and the attached exhibits, the record in this action, and any oral argument permitted by the Court.

This motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on May 29, 2025 and September 29, 2025.

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTS ...................................................................................................................... 2

I.      DEFENDANTS ................................................................................... 2

II.     RELEVANT ALLEGATIONS AND JUDICIALLY NOTICEABLE
FACTS ................................................................................................. 3

       A.     Apple's DSP and Timeline .................................................... 3

       B.     The iPhone 16 Cycle: An Unexpected Content Reduction ............ 3

       C.     The iPhone 17 Cycle:  Further Content Reductions & Dual-
Sourcing Pressures ............................................................... 4

       D.     Plaintiff's Allegations .......................................................... 5

ARGUMENT .............................................................................................................. 5

I.      PLAINTIFF FAILS TO ALLEGE ANY MATERIAL OMISSION ........ 5

       A.     The Confidential Witnesses and Competitor Statements Do Not
Show that Defendants Had, and Failed to Disclose, Material
Information. ........................................................................ 6

           1.     The confidential witnesses lack personal knowledge of the
allegations attributed to them. ..................................... 6

           2.     The confidential witnesses do not establish when Apple
made or informed Skyworks of its final content decisions. .. 8

           3.     Competitors and analyst public statements do not establish
when Apple made or informed Skyworks of its final
content decisions. ....................................................... 10

       B.     Plaintiff Has Not Adequately Alleged the Challenged Statements
Were Materially False or Misleading or Even Actionable. ........... 11

           1.     Statement 1 (8/7/23) .................................................. 13

           2.     Statements 2 & 3 (11/2/23) .......................................... 13

           3.     Statements 4 & 5 (1/30/24) .......................................... 14

           4.     Statement 6 (3/5/24) .................................................. 15

           5.     Statement 7 (11/12/24) ................................................ 15

           6.     Statements 8-10 (1/8/25) ............................................. 16

           7.     Statement 11 (Risk Factors) ......................................... 17

i

II.    PLAINTIFF FAILS TO ALLEGE SCIENTER ....................................... 18

　　A.    Plaintiff Does Not Plausibly Allege a Motive for Fraud. .............. 19

　　B.    Scienter Cannot Be Inferred from Plaintiff's Other Conclusory Allegations. ............................................................................... 20

　　　　1.    Plaintiff's alleged timeline does not support an inference of scienter. ................................................................................. 20

　　　　2.    Plaintiff has not adequately pled core operations. .............. 20

　　　　3.    Griffin's and Sennesael's departures are insufficient to infer scienter. ................................................................. 21

　　C.    Plaintiff's Scienter Allegations Fail When Considered Holistically. ............................................................................... 22

III.    PLAINTIFF'S SECTION 20(A) CONTROL PERSON LIABILITY CLAIM FAILS. ....................................................................... 22

CONCLUSION ........................................................................................... 23

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:25-CV-00411-DOC-JDE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ................................................................. 12

*Applestein v. Medivation, Inc.*,
  861 F. Supp. 2d 1030 (N.D. Cal, 2012), *aff'd*, 561 Fed. Appx. 598
  (9th Cir. 2014) ........................................................................................ 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 5

*Carr v. Zosano Pharma Corp.*,
  2021 WL 3913509 (N.D. Cal. Sept. 1, 2021) ....................................... 21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .......................................................... 12, 22

*In re Cloudera, Inc. Sec. Litig.*,
  121 F.4th 1180 (9th Cir. 2024) ......................................................... 6, 17

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .............................................................. 12

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................... 6, 8, 19

*In re Downey Sec. Litig. (Downey I)*,
  2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ........................................ 21

*Farhar v Ontrak, Inc.*,
  714 F. Supp. 3d 1198 (C.D. Cal. 2024) ................................................ 14

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ......................................... 15

*In re Glenfed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) (en banc), *superseded by statute on other grounds* ........................................................................................... 6, 17

iii

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007)......................................................................16, 21

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008)......................................................................12

*Janus Capital Group., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)......................................................................1, 16

*Kairos Inv. Mgmt. Co. LLC v. J. P. Morgan Sec. LLC*,
   2023 WL 9375171 (C.D. Cal. Dec. 11, 2023)......................................................................12

*In re LeapFrog Enters., Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007)......................................................................17

*Macomb Cty. Emps. Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ......................................................................5

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ......................................................................5

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ......................................................................19

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir 2014) ......................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)......................................................................12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ......................................................................5, 12

*Peters v. Twist Bioscience Corp.*,
   2025 WL 2532671 (N.D. Cal. Sept. 3, 2025)......................................................................13

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998)......................................................................16

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d (9th Cir. 2014) ......................................................................20, 21

*Prodanova v. H.C. Wainright & Co.*,
   993 F.3d 1097 (9th Cir. 2021) ......................................................................19, 20

iv

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ................................................................. 5

*Roncini v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .......................................................... 6, 17

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) ..................................................... 18-19

*In re Sona Nanotech, Inc. Sec. Litig.*,
    562 F. Supp. 3d 715 (C.D. Cal. 2021) ............................................... 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................... 1, 5, 18

*Terenzini v. GoodRx Holdings, Inc.*,
    2022 WL 122944 (C.D. Cal. Jan. 6, 2022) ....................... 11, 12, 13, 14

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020), *aff'd sub nom., Weston Fam.
    P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022) ................ 11

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ................................................ 20

*Vicari v. Voyager Fin. Grp. LLC*,
    2013 WL 12136519 (C.D. Cal. Sep. 17, 2023) .................................. 22

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................. 17

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ............................................................. 19

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................. 6, 18, 20, 22

**Statutes & Rules**

15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act of 1934) . 5, 16, 22

15 U.S.C. § 78t(a) (Section 20(a) of the Securities Exchange Act of
    1934) .............................................................................................. 22

15 U.S.C. § 78u-5(c)(1)(B) ........................................................................... 12

17 C.F.R. § 240.10b-5 (Rule 10b-5) .............................................................. 5

Fed. R. P. 9(b) ........................................................................................ 1, 5, 17

Private Securities Litigation Reform Act (PSLRA) ........................................ *passim*

**Other Authorities**

https://www.apple.com/iphone/ ..................................................................... 3

https://www.apple.com/newsroom/2025/09/apple-debuts-iphone-17/ .................... 3

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:25-CV-00411-DOC-JDE

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Skyworks Solutions, Inc. ("Skyworks" or "Company") is a leading supplier of analog and mixed-signal semiconductors. Skyworks has supplied components for each generation of Apple Inc. ("Apple")'s iPhone since the first iPhone launched in 2007. Skyworks measures the extent of its product representation within each iPhone generation as its "content position." In April 2024 for the iPhone 16, and then again in February 2025 for the iPhone 17, Skyworks informed investors that its content position would be lower than in the prior generation. After each announcement, Skyworks' stock price declined.

From these bare events, Plaintiff works backwards to manufacture a fraud claim against Skyworks and its former CEO and CFO. Plaintiff challenges seven optimistic and forward-looking statements made during Skyworks' earnings calls, three statements made by analysts, and one of the Company's risk factors disclosed in its FY23 10-K and revised for its FY24 10-K (collectively the "Challenged Statements").[1] Plaintiff contends that Apple made, and disclosed to Skyworks, its final content decisions for the iPhone 16 in June 2023 and iPhone 17 in June 2024. According to Plaintiff, Skyworks omitted this information when it made the Challenged Statements, rendering them materially false or misleading and giving the market the incorrect impression that Skyworks' content position was "secure." Plaintiff's hindsight-driven attacks do not withstand the slightest legal scrutiny, let alone satisfy the "[e]xacting pleading requirements" of both the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

*First*, Plaintiff fails to plead that the Challenged Statements were actionable or materially false or misleading. No facts are alleged showing that Apple had completed the Down Selection Process ("DSP") at the time of any Challenged Statement.

---

[1] Attachment A tracks the Challenged Statements by number for ease of reference.

Without any facts pertinent to the years at issue, Plaintiff depends on unreliable confidential witness allegations about a purported typical timeline for Apple's DSP and general statements of optimism by a competitor. This mere speculation is inadequate to plead the alleged omissions.

Moreover, the Challenged Statements are taken out of context, and reflect inactionable optimism, opinions and forward-looking statements. No Challenged Statement implied, much less stated, that Skyworks' content position in the next or future iPhone generations was "secure." Three of the Challenged Statements were not even made by Defendants—they are analysts' statements—and cannot be the basis of a claim against Defendants.

*Second*, Plaintiff's scienter allegations do not make sense. Plaintiff pleads no facts to show that the former CEO or CFO had motive to deceive the market or knew what the Company's content position was in either the iPhone 16 or iPhone 17 when they spoke to the market. And Plaintiff pleads no other basis from which to infer scienter.

Accordingly, the Court should dismiss the Consolidated Complaint ("CC").

## FACTS

### I.    DEFENDANTS

Skyworks' semiconductor products support a wide range of global customers, including Apple, across diverse sectors including consumer electronics, automotive, and broadband. Ex. 1 at 6. Liam K. Griffin ("Griffin") was Chairman of the Board, Chief Executive Officer, and President of Skyworks until February 2025. ¶ 29. Kris Sennesael ("Sennesael") was Senior Vice President and Chief Financial Officer of Skyworks until May 2025. ¶ 31.

## II.  RELEVANT ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS

### A.  Apple's DSP and Timeline

Apple released the iPhone 16 in September 2024 and the iPhone 17 in September 2025. ¶¶ 12, 45; https://www.apple.com/newsroom/2025/09/apple-debuts-iphone-17/. For each generation of iPhone, Apple sources components from suppliers such as Skyworks and awards suppliers "design wins" through a competitive bidding process, the DSP. ¶¶ 46, 49. A design win entitles a supplier to provide specific components for applicable iPhone models in that generation. Ex. 1 at 14-15.[2] Sometimes Apple sources specific components from two suppliers. ¶ 56. Skyworks' content position reflects the aggregate, blended average dollar value of all components awarded in an iPhone generation's DSP on a per phone basis, based on the expected mix of models to be sold.

Neither Apple nor its suppliers publicly disclose the timeline for Apple's final content decisions. Although the CC makes unreliable general assertions about the DSP and Apple's manufacturing timeline, there are no specific facts alleged regarding when Apple made its iPhone 16 or 17 final content decisions or disclosed those decisions to Skyworks. Nevertheless, Plaintiff posits Skyworks knew of Apple's final content decisions for the iPhone 16 by June 2023, and for the iPhone 17 by June 2024. ¶¶ 50-51.

### B.  The iPhone 16 Cycle: An Unexpected Content Reduction

Skyworks bid on multiple components for the iPhone 16 and, although it secured design wins, its content position was less than in the iPhone 15. ¶ 78. Skyworks was transparent with investors, disclosing during its April 30, 2024 earnings call that it expected its iPhone 16 content position to be down "a little more than 10% compared to the current phone model..." ¶ 78. Skyworks explained it had

---

[2] For example, the iPhone 17 generation has models iPhone 17, iPhone Air, iPhone 17 Pro, and iPhone 17 Pro Max. *See* https://www.apple.com/iphone/.

"been placed in a unique situation with our largest customer, where we were unable to consummate an award that we expected, and frankly, thought we had earned." ¶ 78. Skyworks' stock price declined approximately 15%. ¶ 80.

In its FY23 10-K, filed on November 17, 2023, Skyworks had disclosed the risk of competitors gaining content at Skyworks' expense. *See, e.g.* Ex. 1 at 20. Following its content loss on the iPhone 16, in its FY24 10-K (filed on November 17, 2024), Skyworks updated the disclosure to reflect that it had experienced a content loss. *See* Ex. 9 at 20 ("We currently face significant competition in our markets and expect that intense price and product competition will continue. From time to time, ***we have lost market share as a result of competition***, and we could lose market share in the future. Also***, this competition has resulted in,*** and is expected to continue to result in, ***declining average selling prices for many of our products and increased challenges in maintaining or increasing revenue, gross margin, and market share.***") (emphasis added).

### C.  The iPhone 17 Cycle:  Further Content Reductions & Dual-Sourcing Pressures

On its February 5, 2025 earnings call, Skyworks disclosed that despite securing design wins in the iPhone 17, the Company's content position was "expected to be down 20% to 25%" from the iPhone 16. ¶¶ 104–107. Skyworks explained it was now "'sharing a socket' that it did not share last year," meaning Apple awarded a particular iPhone 17 component to two suppliers, where Skyworks had been the sole supplier for the iPhone 16. ¶ 106. *See also* ¶ 105 ("instead of being single sourced on one particular socket, it's being dual sourced"). As a result, Skyworks' content position for the iPhone 17 was lower than in the iPhone 16. Skyworks' stock declined approximately 25%. ¶ 110.

### D.    Plaintiff's Allegations

Plaintiff alleges that Skyworks, Griffin and Sennesael made materially false or misleading statements to the market between August 2023 and February 2025 by (a) failing to disclose that Apple had reduced Skyworks' content position, and (b) proffering, through those same statements, a "deliberately reckless" portrayal of the Company's content position as "secure." *See e.g.,* ¶ 129. Plaintiff contends that the truth was revealed in corrective disclosures on April 30, 2024 and February 5, 2025, when Skyworks disclosed its expectation of reduced content positions in the iPhones 16 and 17, respectively.

## ARGUMENT

A claim for securities fraud under Securities Exchange Act Section 10(b) and Rule 10b-5 is subject to the "[e]xacting pleading requirements" of both Rule 9(b) and the PSLRA. *Tellabs,* 551 U.S. at 313. These "'heightened pleading requirements . . . present no small hurdle,'" *Macomb Cty. Emps. Ret. Sys. v. Align Tech., Inc*., 39 F.4th 1092, 1096 (9th Cir. 2022) (citation omitted), and Plaintiff must plead each element with particularity. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 605 (9th Cir. 2014). The Court need not accept as true conclusory or speculative allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Because the CC rests entirely on conclusory and speculative allegations about when Apple finalized its content decisions for the iPhones 16 and 17 and when Defendants learned of these decisions, Plaintiff has failed to plead both falsity and scienter, each an independent basis for dismissal.

## I.    PLAINTIFF FAILS TO ALLEGE ANY MATERIAL OMISSION

To survive this motion to dismiss, each Challenged Statement must be demonstrably "false or misleading at the time they were made." *In re Rigel Pharms., Inc. Sec. Litig*., 697 F.3d 869, 876 (9th Cir. 2012). "The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1070 (9th Cir. 2008). These "exacting requirements," require a

5

plaintiff plead "specific facts indicating why" the statements were false. *Id*. "'[L]ater, sobering revelations' do not by themselves 'make the earlier, cheerier statement a falsehood.'" *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1189 (9th Cir. 2024) (citation omitted). Plaintiff "must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds,* PSLRA, *as recognized in Roncini v. Larkin,* 253 F.3d 423, 429 n.6 (9th Cir. 2001).

Here, Plaintiff fails to plead specific facts to support its cornerstone allegation: that Defendants knew that Skyworks' content position would be lower in the iPhone 16 in June 2023, and in the iPhone 17 in June 2024, before the Challenged Statements were made.

### A. The Confidential Witnesses and Competitor Statements Do Not Show that Defendants Had, and Failed to Disclose, Material Information.

#### 1. *The confidential witnesses lack personal knowledge of the allegations attributed to them.*

Where a 10(b) complaint relies on confidential witnesses ("CW"), it must plead a "basis for determining that the witnesses in question have personal knowledge of the events they report." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). Courts disregard information purportedly provided by CWs who are not "described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Id.* (internal quotation marks and citation omitted). *See also In re Downey Sec. Litig.*, 2009 WL 2767670 *10 (C.D. Cal. Aug. 21, 2009) (descriptions of CWs lacked sufficient particularity).

As a threshold matter, the CC fails to allege the necessary indicia of reliability for both confidential former Skyworks employees (FEs 1 and 2), and an unnamed

former Apple employee. The allegations derived from these sources must be disregarded. *Id.*

Significantly, neither FE purports to have had responsibility for any aspect of the DSP. FE1 was responsible for "inventory, supply planning, and program management" "supported all of Skyworks's program managers ("PMs") regarding all aspects of the ***production process***, including meeting with Apple representatives" (emphasis added). ¶ 38. The CC does not connect production meetings to the DSP or allege when such meetings occurred. FE2's role was similarly removed from the DSP; they were responsible for "planning and procurement of manufacturing at the Mexicali facility" and "outsource services (planning, procurement, and deliveries) in the Asia Pacific Region." ¶ 59. Neither FE purports to have had meetings or communications with, or visibility into any knowledge or conduct of Griffin or Sennesael regarding the DSP.

In addition, according to the CC, FE1 left Skyworks in September 2023 (just one month into the Class Period) and FE2 left in January 2023 (eight months before the start of the Class Period). ¶¶ 38, 59. Given their departure dates from Skyworks, neither FE could have any knowledge about the iPhone 17 DSP and, at best, FE1 could have had limited knowledge about the iPhone 16 DSP.

Plaintiff's third source of allegations contributes even less. He is purportedly a former Apple "Carrier Account Manager" who, in an interview, claimed to be responsible for introducing new phones "pre-launch" to certain cell phone carriers in Europe and the United Kingdom. ¶ 55. Because Plaintiff's counsel has not spoken to the Apple CW, and has no basis to know if he held this role, the Court should disregard this CW. *See Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1038-39 (N.D. Cal, 2012), *aff'd*, 561 Fed. Appx. 598 (9th Cir. 2014) ("the Court finds that the confidential witness statements are further rendered unreliable because Plaintiff's counsel and investigators never actually spoke to CW–1 or CW–3"). In addition, this former Apple employee left Apple in May 2023, before even Plaintiff alleges the DSP

7

1  for the iPhone 16 was completed, and his alleged job responsibilities did not give him

2  visibility into when Apple made or conveyed final content decisions to Skyworks. ¶

3  55.

4      ### 2.    *The confidential witnesses do not establish when Apple made*

5      *or informed Skyworks of its final content decisions.*

6      Even apart from the CWs' lack of reliability, the allegations attributed to them

7  do not support Plaintiff's speculation that Apple completed its DSP, and informed

8  Skyworks of the same, by June 2023 for the iPhone 16 and June 2024 for the iPhone

9  17 (¶¶ 5, 61). *See Downey*, 2009 WL 2767670 at *10.

10     FE1— Plaintiff's primary source—speaks in vague terms about a generic

11 timeline, not what happened in 2023 or 2024. *See* ¶ 50 (the DSP "usually" occurred in

12 April "or sometimes March"); ¶ 51 (final design decisions were made in "May or

13 June"); ¶ 53 (by "June or so" Skyworks would purportedly know what products it

14 won); ¶ 54 ("production would generally begin 2-3 months" later, "in or around

15 August or September"). None of these statements speaks to the actual timeline of

16 Apple's alleged decisions in 2023 and 2024.

17     What FE1 does ***not*** say is most telling. If Plaintiff is correct that the component

18 selections for the iPhone 16 were completed in May or June 2023—***a full quarter***

19 ***before FE1 departed Skyworks***—and that production started in August or September

20 2023—***also before FE1 departed Skyworks*** (¶¶ 51-53), FE1 would have attested to

21 the actual dates that these critical events for the iPhone 16 occurred. FE1 makes no

22 such allegations and the absence of these essential allegations from FE1 shows

23 Plaintiff's theory is pure speculation. *See Downey*, 2009 WL 2767670 at ** 6, 10

24 (rejecting allegations of CWs that were contradictory and based on speculation).

25     Plaintiff's misuse of FE1 does not end there. Notwithstanding that FE1 did not

26 work at Skyworks in 2024, Plaintiff uses FE1's hypothetical timeline to purportedly

27 demonstrate the actual iPhone 17 timeline in 2024. *See* ¶ 51 ("FE1 recalled that Apple

28 made final design decisions in or around May or June in the year preceding the iPhone

launch (e.g., in May or June 2024 for an iPhone launch in 2025.)"). FE1 could not possibly have "recalled" the timing of a decision that occurred after they departed the Company, and Plaintiff's reference to a 2024 content decision is misleading pleading.

FE2 and the former Apple employee do not support Plaintiff's conclusion either. FE2 merely states that while he was employed, the start time for "mass product sourcing and supply chain management" in the Mexicali facility began in January of the year of a phone's release and then further speculates that wafer production in a different facility (Newbury Park) "likely would have begun" "sometime" before that. ¶59. And, the purported further corroboration from the former Apple employee for this hypothetical timeline is a statement that the iPhone design is purportedly "locked down" a year in advance of launch, and manufacturers are "making their bids" at that point. ¶55. To the extent a timeline is even discernable, it suggests (contrary to FE1) that design wasn't actually "locked down" until September of the year prior to launch (at the earliest) and supplier bids were occurring *after June*. ¶ 60. Moreover, neither FE2 nor the Apple former employee were employed at Skyworks or Apple during the relevant time period and thus cannot support assertions about Skyworks' knowledge of its content position prior to the Challenged Statements.

*Finally*, FE1's statement that FE1 "knew by at least March 2023 that Apple was no longer going to be single sourcing certain chip components from Skyworks for the iPhone 16" (¶ 40) also does not show Plaintiff's conclusion that Apple had completed the DSP before the Challenged Statements or even that Skyworks' content would necessarily be down. The Company's content position reflects an aggregate of multiple components (as Plaintiff acknowledges). No allegations address which components Skyworks bid on for the iPhone 16 and which would be dual sourced. And, not even Plaintiff attributes Skyworks' content loss in the iPhone 16 to dual-sourcing.

### 3. Competitors and analyst public statements do not establish when Apple made or informed Skyworks of its final content decisions.

Plaintiff cannot shore up its speculative theory of falsity by drawing strained conclusions from general, public statements by Skyworks' competitors and analysts. These are not allegations of fact about Apple's decisions with respect to Skyworks' content for the iPhone 16 or 17 and therefore fail the PSLRA's requirements for pleading with particularity that the Challenged Statements were false when made.

***Qualcomm***. Plaintiff uses two statements by Qualcomm in September and November 2023 to claim that Skyworks knew its iPhone 16 content position before it made Challenged Statements 2 through 6. Neither statement supports this conclusion. In September 2023 (which was after Challenged Statement 1), Qualcomm announced an agreement to supply Snapdragon 5G Modem-RF systems for iPhone 16-18. ¶ 62. As Plaintiff admits, it was a known risk that this deal would give Qualcomm leverage to win bids on other components for which Skyworks was competing. ¶¶ 63-67; Exs. 1, 9. But, Plaintiff does not allege facts showing that Qualcomm had in fact already exerted leverage on Apple to take component share from Skyworks before the Challenged Statements, let alone that Apple had conveyed any such decisions to Skyworks.

And, Qualcomm's November 28, 2023 public statement (which was made after Challenged Statements 1 through 3) undermines Plaintiff's contention that the DSP was completed by June 2023. Qualcomm's CFO was asked why the Company was bullish for next year (i.e. 2024) and stated: "we already know the next 2 or 3 chips we are doing. And ***we expect*** this 10-ish percent increase in content ***at the minimum as we look forward***." ¶ 68 (emphasis added). Qualcomm was making a forward-looking projection, reflecting on components for which it was making bids and its anticipated (i.e., but not yet known) content position. This bullishness is not surprising given Qualcomm's increased leverage. But it addressed the future—not the present. And, even if Qualcomm knew or had reason to anticipate its *own* component wins, it does

10

not follow that Skyworks knew about its own design wins. Plaintiff does not allege what components both companies bid on, what components Qualcomm won to increase its content position, what portion of that win entailed a corresponding loss for Skyworks, or when Skyworks supposedly knew about it.

*Broadcom*. Nor can Plaintiff convert analyst reports about Broadcom's June 2024 content win in the iPhone 17 into a known content loss for Skyworks. This is pure speculation. The CC admits that when analysts reported that Broadcom had won new content for the iPhone 17, "[n]either Broadcom nor the analysts identified the specific component that Broadcom had won in the iPhone 17, or that Broadcom had won content at Skyworks' expense." ¶ 93. Nevertheless, Plaintiff concludes, with no other facts, that Skyworks must have known of a content loss at that time. Such speculation fails under the PSLRA. *See, e.g.*, *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 122944, at **5, 7 (C.D. Cal. Jan. 6, 2022) (rejecting fraud-by-hindsight reasoning where the "critical missing piece" was a specific allegation that defendants had information about the third-party's plans).

Without specific facts that, when making the Challenged Statements, Defendants knew what Skyworks' content position was in the iPhone 16 or 17, Plaintiff impermissibly posits that Defendants must have been able to take non-specific public statements of optimism from a competitor and analysts and conclude that Skyworks' content position would decline year over year. Securities laws do not allow such a leap or require such market clairvoyance. *Id.*; *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 884 (N.D. Cal. 2020), *aff'd sub nom., Weston Fam. P'ship LLLP v. Twitter, Inc*., 29 F.4th 611 (9th Cir. 2022).

### B.   Plaintiff Has Not Adequately Alleged the Challenged Statements Were Materially False or Misleading or Even Actionable.

Even apart from the failure to show that Defendants withheld material information, Plaintiff has also failed to allege that any Challenged Statement was materially false or misleading or even actionable. Not a single Challenged Statement

11

1   implied, much less stated, that Skyworks' content position in the next or any future

2   iPhone generations was "secure." Many of the Challenged Statements are not even

3   specific to the iPhone or mobile content more broadly. In any event, Skyworks warned

4   investors that it could lose content position to its competitors. *See, e.g.,* Ex. 1 at 20;

5   Ex. 9 at 20. The Challenged Statements cannot have plausibly misled the market to

6   believe Skyworks was guaranteed the same or better content position each year. *See*

7   *Terenzini*, 2022 WL 122944, at *5 (the "challenged statements did not guarantee the

8   continuation of GoodRx's PBM contracts or numbers and warned they might

9   decrease"). Moreover, the Company's loss of content position in the iPhone 16

10  demonstrated what investors already knew: content wins were not guaranteed.

11      Furthermore, in this Circuit, "vague, generalized assertions of corporate

12  optimism or statements of 'mere Puffing' are not actionable material

13  misrepresentations" and are regularly dismissed. *In re Impac Mortg. Holdings, Inc.*

14  *Sec. Litig.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (citation omitted). These

15  "mildly optimistic, subjective assessment[s]" express opinions—not facts—and aren't

16  "capable of objective verification." Thus, no reasonable investor would rely on them.

17  *Apollo*, 774 F.3d at 606; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th

18  Cir. 2021). Similarly, Plaintiff cannot challenge opinion statements unless the stated

19  belief was "objectively incorrect," and also subjectively, the speaker did not "honestly

20  hold the stated belief." *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys.*

21  *v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017) (citing *Omnicare, Inc. v.*

22  *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)); *Kairos*

23  *Inv. Mgmt. Co. LLC v. J. P. Morgan Sec. LLC*, 2023 WL 9375171, at *3-4 (C.D. Cal.

24  Dec. 11, 2023). Finally, forward-looking statements are not actionable as a matter of

25  law if either (1) they are identified as such and accompanied by meaningful cautionary

26  statements; or (2) plaintiff does not show that they were made with actual knowledge

27  of falsity. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (emphasis in

28  original, citations omitted); 15 U.S.C. § 78u-5(c)(1)(B). Below, each of these

12

1    deficiencies is addressed on a statement-by-statement basis.

2                    **1.    Statement 1 (8/7/23)**

3         During the Q3 FY23 earnings call, Sennesael was asked to reflect on revenue

4    generated by content wins from the iPhone 15 and other Apple products: "I was

5    hoping you could provide what percent of revenue came from your largest customer.

6    And in addition to that, if you're able to quantify the percentage of your broad market

7    sales that come from this largest customer, that would be helpful." *Id.*; Ex. 2 at 7. The

8    question did not address the Company's expectations or prospects for the iPhone 16

9    (from which Skyworks would not start generating revenue until the following year); it

10   was about the reported revenue from the iPhone 15 and other Apple products.

11   Sennesael's complete response—*i.e.*, "we continue to win big with that large

12   customer"—is unsurprisingly, about past revenue generated and not about the iPhone

13   16. *Id.*

14        Furthermore, his statement is precisely the kind of inactionable puffery on

15   which investors do not rely. *See Terenzini*, 2022 WL 122944, at *4; (optimistic

16   statements about competitive positioning are inactionable puffery); *Peters v. Twist*

17   *Bioscience Corp.*, 2025 WL 2532671, at *7 (N.D. Cal. Sept. 3, 2025) ("'why we win'

18   is not actionable because it is 'the type of hopeful, nebulous statement that reasonable

19   investors have come to expect from high-ranking company executives'") (internal

20   citations omitted).

21                   **2.    Statements 2 & 3 (11/2/23)**

22        In the Q4 FY23 earnings call, Griffin was asked:  "Where do you think we are

23   with regard to the inventory correction in [the mobile space and broad markets]

24   particularly as we look into the March and June quarters, what's the prospect for when

25   we can get some bottoming out here and we go back to shipping to actual real

26   consumption?" ¶ 131; Ex. 3 at 4. Griffin responded, "In the mobile business, we

27   absolutely know where the dollars are and where the opportunities are, and we have

28   eyes on all that, and we'll continue to drive that portfolio very strong." *Id.* Later he

13

was asked about historical 10% annual content increases and "do you think you can

grow content another 10%." ¶ 132; Ex. 3 at 6. Neither question mentioned Apple, and

the second was not even limited to mobile content.

Griffin's responses were predictably general, including: "our ambition is to

continue to grow that content…I think it's going to be a great journey for us a long

way. We're learning a lot more. Our teams together are executing in an outstanding

way. And we're committed to growth and diversification." *Id.* No alleged facts show

that the market understood these generalities to confirm that Skyworks had obtained a

particular content position in the iPhone 16. Nor could the market plausibly rely on

such general statements of optimism. *See Terenzini*, 2022 WL 122944, at *4; *Farhar v*

*Ontrak, Inc.,* 714 F. Supp. 3d 1198, 1209 (C.D. Cal. 2024) (comments that the growth

of the sales pipeline was at its "most robust level," and will "proceed into new

heights" are puffery because they are "not capable of objective verification.").

### 3.    Statements 4 & 5 (1/30/24)

In the Q1 FY24 earnings call, speaking about the "near- and long-term secular

trends in [its] end markets" Griffin said Skyworks was "poised to return to growth

when the markets recover" and "[w]e are pleased with our competitive positioning and

technology road map." ¶ 135; Ex. 4 at 3. As for long term, he said: "We also remain

bullish on the long-term RF content stored in smartphones, coupled with growing 5G

penetration. We see increasing levels of complexity and content with each new

generation." *Id.* Not only are these forward-looking statements, but they are also

inactionable puffery. *See Terenzini*, 2022 WL 122944, at *4; *Farhar,* 714 F. Supp. 3d

at 1209. Furthermore, Griffin didn't even mention Apple.

Later, Griffin responded to a question about potential future content position,

saying: "I think we have a great position with our largest customer. Nothing really is

concerning on that point. I mean we know exactly who we are and who they are, and

we have great partnerships and we'll continue to drive success." Ex. 4, ¶ 135. This

forward-looking response is classic opinion; Plaintiff has not alleged any facts

14

demonstrating that the statement was objectively incorrect or that Griffin did not hold this belief when he spoke. Statements 4 and 5 were also forward-looking and accompanied by meaningful cautionary language. Ex. 1 at 4.

### 4. Statement 6 (3/5/24)

At an investor conference, Griffin was asked to speculate about the industry should Apple not rely on Qualcomm for any of its modems—which is still not the case in the newest generation of iPhone: "Why an Apple modem would be a positive for the RF industry and yourselves included…" ¶ 138; Ex. 5 at 12. On its face, this question was not about RF content for the *iPhone 16* for which Qualcomm still had a modem contract with Apple. Griffin focused optimistically on how Skyworks' business practices were and would be valued by its customer in any hypothetical future scenario: "the larger customer definitely prefers the kind of things that we do, honestly." *Id.* Such forward-looking opinions are inactionable. *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *15 (N.D. Cal. Feb. 12, 2015) ("[G]eneralized statements… concern[ing] a company's relationships with important customers" are non-actionable corporate optimism). *See also* Ex. 1 at 4 (cautionary language).

### 5. Statement 7 (11/12/24)

During the Q4 FY24 earnings call, Griffin was asked for his view of "the long term, say, 2025 to 2026 in terms of [Skyworks'] ability to gain back content" and was further asked "what are you seeing in terms of generic content growth in that kind of flagship of front end from AI?" Ex. 6 at 5; ¶ 140. This question was not specific to the iPhone 17 and Griffin's response was equally general optimism and forward-looking: "there's a tremendous opportunity for us to continue to grow in mobile." *Id.* He further acknowledged a lack of security: the "last couple of quarters weren't so great" and that growth is "going to take a little time." *Id.* Ex 1 at 4 (cautionary language).

###### 6.     Statements 8-10 (1/8/25)

Statements 8 and 9 appeared in an Oppenheimer analyst note purporting to reflect a "sit down" with Sennesael and Skyworks' VP of Investor Relations, Raji Gill, and Statement 10 is a JP Morgan note summarizing that analyst's takeaways from the same investor conference. Exs. 7 & 8. Plaintiff attacks cherry-picked statements, ignoring the context and clear meaning of the analyst notes when read in full. The notes concern the overall content growth opportunity for all suppliers for RF components within the iPhone going forward, not Skyworks' expectations for its own portion of that content opportunity in the iPhone 17. And, as with Statement 7, the references to Skyworks losing content in the iPhone 16 recognize that Skyworks' content position was not "secure."

These analyst report statements fail to plead the speaker and precise content of the purportedly false statement. *In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 723 (C.D. Cal. 2021) (plaintiff "must identify the 'who, what, when, where, and how' of the fraudulent misconduct") (citation omitted). Although Plaintiff contends that one statement in the Oppenheimer note was made by Sennesael, the publication itself merely refers to "Mgmt." *Compare* Ex. 7 to ¶ 142. The JP Morgan publication does not refer to any speaker at all. Ex. 8. This type of "group pleading" did not survive the PSLRA. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007). Plaintiff must plead the maker of the statement with the requisite particularity and cannot presume they "are the collective action of the Defendants." *Id.* Nor can such challenges survive *Janus Capital Group., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), which affirmed that Section 10(b) liability attaches only to the "maker" of a challenged statement.

Plaintiff's challenge also fails because it is impossible to tell what, if anything, Sennesael said to the analysts. The publications do not purport to quote anyone and Plaintiff cannot identify what comes from Sennesael, from "Mgmt," or is the analyst's own subjective impressions, paraphrasing and contributions. For example, consider

16

the Oppenheimer statement "mgmt. highlighted positive tailwinds from Apple design process" ¶ 142, Ex. 7, and the JP Morgan statement "We believe the team is poised to return to its historical average content growth," ¶ 145, Ex. 8. These statements don't identify what was said about tailwinds or show that Sennesael, and not the analyst, characterized them as "positive." And, the "we believe" referenced by JP Morgan reflects the analysts' opinions, not those of anyone from Skyworks. For exactly these reasons, courts have long rejected attempts to challenge analyst paraphrases of management commentary. *See Plevy v. Haggerty,* 38 F. Supp. 2d 816, 824 (C.D. Cal. 1998) (rejecting challenges to analyst reports because "Plaintiffs cannot assume that the analysts' reports simply repeated verbatim the statements relayed to them by Defendants."); *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998) (analyst paraphrases which "repackage[] defendants' actual oral statements in vague and impressionistic terms" "lack the specificity required by Rule 9(b) and the [PSLRA]."); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1051–52 (N.D. Cal. 2007) (rejecting challenges to analyst paraphrases where "[n]one of [the challenged] statements appears to be a repeat of what management actually said to the [. . .] analyst.").

### 7.    *Statement 11 (Risk Factors)*

Plaintiff asserts that Skyworks' risk disclosures about potential material adverse risks from customer concentration, market competition, and potential for rapid loss of market share to competitors published in its FY23 and FY24 Form 10-Ks (on November 17, 2023 and November 15, 2024) were misleading because they portrayed hypothetical risks that had already materialized. ¶ 152.

This is a classic improper fraud by hindsight argument. Statements must be known to be false "at [the] time by the people who made them." *Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001). *See also Cloudera, Inc.,* 121 F.4th at 1189; *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1549. As noted, Plaintiff has not pled facts showing that the Company knew its content position would be down for the iPhone 16

17

1  when the FY23 Form 10-K was filed on November 2023.

2      With respect to FY24 risk disclosures, the CC is misleading. Having lost

3  content for the iPhone 16, Skyworks revised its risk disclosures to acknowledge the

4  risk had already materialized. *See* Ex. 9 ("We currently face significant competition in

5  our markets and expect that intense price and product competition will continue. From

6  time to time, ***we have lost market share as a result of competition,*** and we could lose

7  market share in the future. Also, ***this competition has resulted in,*** and is expected to

8  continue to result in, ***declining average selling prices for many of our products and***

9  ***increased challenges in maintaining or increasing revenue, gross margin, and***

10 ***market share.***"). Plaintiff ignores this additional language, contending the disclosure

11 was unchanged from FY23. ¶ 150.

## II.    PLAINTIFF FAILS TO ALLEGE SCIENTER

13     The CC should be dismissed for the independent reason that Plaintiff has failed

14 to allege any particularized facts supporting a cogent and compelling inference that

15 Griffin or Sennesael acted either intentionally or with deliberate recklessness.[3]

16     Plaintiff must "plead with particularity facts that give rise to a 'strong'—*i.e.*, a

17 powerful or cogent—inference" of scienter. *Tellabs*, 551 U.S. at 323. A court should

18 deny a motion to dismiss "only if a reasonable person would deem the inference of

19 scienter cogent and at least as compelling as any opposing inference one could draw

20 from the facts alleged." *Id.* at 324; *see also Zucco*, 552 F.3d at 991 (this analysis is

21 "inherently comparative"; courts compare the "malicious and innocent inferences

22 cognizable from the facts pled" and only find scienter sufficiently pled "if the

23 malicious inference is at least as compelling as any opposing innocent inference.").

24 Notably, "[s]howing scienter necessarily becomes harder when the allegedly

25 misleading statements are not flagrantly false because in those cases an innocent

26

---

27 [3] Deliberate recklessness is "a form of intentional or knowing misconduct." *Zucco*
   *Partners*, 552 F.3d at 991 (citations omitted); *see also In re NVIDIA Corp. Sec. Litig.*,
28 768 F.3d 1046, 1053 (9th Cir 2014).

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:25-CV-00411-DOC-JDE

1    alternative explanation becomes more likely." *Sneed v. Talphera, Inc.*, 147 F.4th

2    1123, 1134 (9th Cir. 2025).

3         The CC fails this comparison test. There is not a single specific allegation in the

4    CC that anyone at Skyworks, let alone Griffin or Sennesael, knew that the Company's

5    content position would be lower for the iPhone 16 or 17 when the Challenged

6    Statements were made, and Plaintiff's unfounded conclusions are not adequate to

7    plead a cogent and compelling inference of scienter.

8         **A.   Plaintiff Does Not Plausibly Allege a Motive for Fraud.**

9         Plaintiff has not explained what Defendants had to gain by withholding

10   negative news that would ultimately be disclosed. *See Prodanova v. H.C. Wainwright*

11   *& Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[L]ack of a plausible motive certainly

12   makes it much less likely that a plaintiff can show a strong inference of scienter."). It

13   "does not resonate in common experience" to "mislead[] the market all the way up to

14   the point that defendants were 'unable to avoid the inevitable.'" *Nguyen v. Endologix,*

15   *Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (rejecting the "notion that a company would

16   promise FDA approval that it knew would not materialize," which "suppos[es] that

17   defendants would rather keep the stock price high for a time and then face the

18   inevitable fallout once [the] 'unsolvable' ... problem was revealed").

19        Notably, Plaintiff has not alleged that Griffin or Sennesael sold stock or had

20   compensation that was materially benefited by withholding the information. *E.g.*,

21   *Prodanova*, 993 F.3d at 1107 ("Generally, we expect that a financial motive for

22   securities fraud will be clear; for example, someone inside a company stands to gain a

23   substantial profit by engaging in deceptive behavior, such as selling shares before the

24   company discloses negative information."); *Downey*, 2009 WL 2767670, at *13

25   (minimal or no stock sales negate scienter). And, the Company's warnings about the

26   risk of content loss to competitors—and revisions for the FY24 10-K—also

27   undermine an inference of scienter. *See In re Worlds of Wonder Sec. Litig.*, 35 F.3d

28   1407, 1425 (9th Cir. 1994) ("The detailed risk disclosure … negates an inference of

19

1    scienter."). Plaintiff's fraud claim does not make sense and that is why there are no

2    specific allegations to support it.

3    **B.    Scienter Cannot Be Inferred from Plaintiff's Other Conclusory Allegations.**

4

5    Lacking any facts to support scienter, Plaintiff contends that the Court should

6    infer scienter from the following allegations: (1) based on Plaintiff's general alleged

7    timeline for the DSP, Defendants must have known Skyworks' content position when

8    they spoke (¶¶ 163-66); (2) selling components to Apple was a core operation of the

9    Company and the misstatements were significant (¶¶ 167-92); and (3) Griffin and

10   Sennesael left the Company in 2025 (¶¶ 193-96).

11   **1.    *Plaintiff's alleged timeline does not support an inference of scienter.***

12

13   As explained above (§__, *supra*), no reliable witnesses or documents support

14   Plaintiff's contention that the DSPs for the iPhone 16 and 17 were completed and

15   known to Defendants before any of the Challenged Statements were made. This is

16   pure speculation and not corroborated by Plaintiff's confidential witnesses. Just as this

17   assertion does not support falsity, it also cannot contribute to any inference that

18   Griffin or Sennesael spoke with the required intent to mislead. *Zucco*, 552 F.3d at 991.

19   **2.    *Plaintiff has not adequately pled core operations.***

20   To rely on core operations, Plaintiff must either allege specific admissions by

21   executives of their "detailed involvement in the minutia of a company's operations" or

22   witness accounts asserting the same. *See Police Ret. Sys. of St. Louis v. Intuitive*

23   *Surgical, Inc.*, 759 F.3d at 1051, 1062 (9th Cir. 2014); *Prodanova*, 993 F.3d at 1111.

24   Plaintiff has alleged neither.

25   The CC does not allege that Griffin or Sennesael had specific details about

26   Apple's content decisions. Rather, Plaintiff points to snippets of the Challenged

27   Statements, arguing they reflect "contemporaneous knowledge of Apple's component

28   selection process." ¶ 180. Just as with the falsity allegations, Plaintiff takes these

20

snippets out of context for its own purposes. Furthermore, scienter "cannot be established based on 'general awareness' and 'hands-on management style.'" *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) (citing *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 681–82 (9th Cir. 2005)). Thus, Griffin and Sennesael's general awareness of the process is not a basis to infer knowledge of specific facts. Notably, neither FE was in a position to be informed of any senior executive's knowledge about the DSP, let alone Griffin or Sennesael's knowledge. And, although FE1 contends that Griffin would regularly present on the specific components Skyworks had won or lost in the bidding process, FE1 does not allege Griffin ever did so with respect to the iPhone 16. ¶ 182-83. This undermines Plaintiff's conclusion that Griffin had any knowledge about the iPhone 16 content decisions up to and including in September 2023 when FE1 was still employed by Skyworks.

Nor is this the "rare circumstance" in which it would be "absurd" to suggest that management was without knowledge of Skyworks' content position losses. *Intuitive Surgical, Inc.*, 759 F.3d at 1062-63 (rejecting the core operations argument where plaintiff only alleged the individual defendants had access to the undisclosed information, not that there were discussions indicating knowledge of the report contents). Here, Plaintiff not only fails to adequately allege when Apple informed Skyworks of its content position, it also fails to allege who at Skyworks received that information, how it would have been conveyed to Griffin and Sennesael, or when they would have been informed.

### 3. Griffin's and Sennesael's departures are insufficient to infer scienter.

Nothing alleged supports Plaintiff's conclusory assertion that Griffin and Sennesael's departures signal that they knowingly made false or misleading statements. *See In re Downey Sec. Litig. (Downey I)*, 2009 WL 736802, at *11 (C.D. Cal. Mar. 18, 2009) ("A resignation or termination provides evidence of scienter only

21

when it is accompanied by additional evidence of the defendant's wrongdoing").

### C.    Plaintiff's Scienter Allegations Fail When Considered Holistically.

Plaintiff's allegations are as defective considered together as considered separately. Plaintiff offers no plausible motive for fraud, and no allegations from confidential witnesses, or from anyone currently or formerly within the Company, suggest *any* fraudulent intent. As a result, the CC "lacks notable features that tend to be hallmarks of a potentially viable securities claim." *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *10 (N.D. Cal. Sept. 1, 2021) (internal quotation marks omitted); *see also e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d at 1163 (noting lack of corroborating allegations from confidential witnesses and/or employees and former employees in dismissing the Section 10(b) claim with prejudice).

### III.    PLAINTIFF'S SECTION 20(A) CONTROL PERSON LIABILITY CLAIM FAILS.

Because Plaintiff has not pled a Section 10(b) claim, the CC also fails to plead control person liability against Griffin or Sennesael under Section 20(a). *See City of Dearborn Heights*, 856 F.3d at 623; *Zucco*, 552 F.3d at 990. Furthermore, conclusory allegations of control against executives, like those alleged here, are insufficient to establish a Section 20(a) claim. *See Vicari v. Voyager Fin. Grp. LLC,* 2013 WL 12136519 *5 (C.D. Cal. Sep. 17, 2023).

1

## <u>CONCLUSION</u>

2         For the foregoing reasons, the Court should dismiss the Consolidated

3   Complaint.

4

5    Date:  September 30, 2025               Respectfully submitted,

6                               SIDLEY AUSTIN LLP

7

8                               By: *<u>/s/ Jaime A. Bartlett</u>*

9                                   Sara B. Brody

10                                  Jaime A. Bartlett

                                Madison J. Ferraro

11                                  SIDLEY AUSTIN LLP

12                                  555 California Street, Suite 2000

                                San Francisco, CA 94104

13                                  Telephone:  +1 415 772 1200

14                                  Facsimile:  +1 415 772 7400

15                                  *Attorneys for Defendants*

16                                  *Skyworks Solutions, Inc., Liam K.*

                                *Griffin, and Kris Sennesael*

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 8:25-CV-00411-DOC-JDE