**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:25-cv-00411-DOC-JDE                          Date:  May 6, 2026

Title: Cesar Nunez v. Skyworks Solutions, Inc. et al

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

|  |  |
|---|---|
| Priscilla Deason<br>for Karlen Dubon | Not Present |
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR<br>PLAINTIFF:<br>None Present | ATTORNEYS PRESENT FOR<br>DEFENDANT:<br>None Present |

**PROCEEDINGS (IN CHAMBERS):    ORDER DENYING MOTION TO
DISMISS [60]**

Before the Court is a Motion to Dismiss the Consolidated Class Action Complaint filed by Louisiana Sheriffs' Pension and Relief Fund ("Plaintiffs") (Dkt. 59) brought by Defendants Liam K. Griffin, Kris Sennesael, and Skyworks Solutions, Inc. ("Defendants") (Dkt. 60). On February 9, 2026 the Court heard oral arguments on this motion. Having reviewed the moving papers submitted by the parties and after hearing oral arguments, the Court **DENIES** Defendants' Motion to Dismiss.

**I.      Background**

**A.      Facts**

Skyworks is a semiconductor company that supplies components to Apple, as well as other technological companies. (Dkt. 66 at 1). Plaintiffs allege that Skyworks, along with former CEO Liam Griffin and former CFO Kris Sennesael misled investors regarding Skywork's content position in the iPhone 16 and iPhone 17. *Id.* Plaintiffs allege that despite knowing Apple was going to decrease the amount of supply it bought from Skyworks for both iPhones, Skyworks' former CEO and CFO made statements that misrepresented this new reality. *Id.* Two Skyworks formers employees involved in the manufacturing process allege that Skyworks executives should have known about the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                                    Date: May 6, 2026

Page 2

company's decreased content position in the iPhones when they made optimistic statements about Skyworks' position with Apple. (Dkt. 66 at 4). Further, Plaintiffs point to reports from Skyworks competitors and analysts to corroborate their timelines of when Skyworks would have known about its decreased content position for the iPhone 16 and iPhone 17. *Id.*

When Defendants revealed in April 2024 that there would be content losses for the iPhone 16, share prices decreased by 15%. (Dkt. 66 at 6). When Defendants revealed further content losses in the iPhone 17 in February 2025, share prices fell by 25%. *Id*. Both Griffin and Sennesael left Skyworks in 2025. *Id.*

### B.      Procedural History

On March 4, 2025, Plaintiff Cesar Nunez filed a Complaint against Defendants in this Court (Dkt. 1). Plaintiffs Louisiana Sheriffs Pension and Relief Fund filed their Consolidated Class Action Complaint on July 31, 2025 (Dkt. 59). They are alleging violations of Section 10(b) and 20(a) of the Exchange Act and violations of Rule 10b-5 promulgated by the SEC. On September 30, 2025 Spyglass filed its Motion to Dismiss (Dkt. 60). Plaintiffs, Louisiana Sheriffs Pension and Relief Fund, filed an Opposition to Defendants' Motion to Dismiss on November 18, 2025 ("Opposition") (Dkt. 66). Defendants filed their Reply in support of their Motion to Dismiss on December 19,2025 ("Reply") (Dkt. 68). The Court heard oral arguments on the Motion to Dismiss on February 9, 2025.

## II.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                        Date: May 6, 2026

Page 3

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

To state a claim for securities fraud under Section 10(a) of the Exchange Act and SEC Rule 10b-5, a plaintiff must allege the following elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Sci.–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Under the governing Private Securities Litigation Reform Act ("PSLRA"), scienter must be pled with particularity "with respect to each act or omission." See 15 U.S.C. § 78u-4(b)(2) (emphasis added); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007); *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1164 (9th Cir. 2009); *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir.), reh'g & reh'g en banc denied, 195 F.3d 521 (1999). The scienter requirement obligates securities fraud plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In the Ninth Circuit – though it has also described it as "a mental state embracing intent to deceive, manipulate, or defraud," *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (omitting internal quotation marks) (quoting *Tellabs*, 551 U.S. at 319) – that element requires deliberate recklessness or conscious misconduct, and deliberate recklessness itself means "some degree of intentional or conscious misconduct." *Silicon Graphics*, 183 F.3d at 974, 979; see also *SEC v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003) (defining recklessness as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                           Date: May 6, 2026

                                                              Page 4

In determining whether a "strong" inference of scienter exists, "the court must take into account plausible opposing inferences." *Id*. at 323. This includes both "plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id*. at 324. However, "[t]he inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences." *Id.* But the inference of scienter must be more than merely "reasonable" or "permissible" – "it must be cogent and compelling." *Id*. A complaint survives "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. Elsewhere, the Court summarized this "strong inference" analysis as follows:

> It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind. Rather, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by § 21D(b)(2) must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff...but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as 'strong' within the intendment of § 21D(b)(2)...an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

*Id*. at 314; see also *id*. at 328 ("A plaintiff alleging fraud in a § 10(b) action...must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference."). In making this determination, the Ninth Circuit indicates that the court is obligated to take a "holistic" approach where individual allegations do not suffice to themselves demonstrate scienter sufficiently. See *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 992 (9th Cir. 2009); see also *In re VeriFone Holdings, Inc. Secs. Litig*., 704 F.3d 694, 702 (9th Cir. 2012). As the Ninth Circuit also only-recently added to the approach to scienter under the PSLRA and Tellabs, "[s]howing scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent alternative explanation becomes more likely." *Sneed v. Talphera, Inc*., 147 F.4th 1123, 1134 (9th Cir. 2025).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                   Date: May 6, 2026

Page 5

## III.     Discussion

### A.     Plaintiffs do not fail to allege material omissions.

Defendants allege that Plaintiffs fails to plead specific facts to support their allegation that Defendants knew Skyworks' content position would be lower in the iPhone 16 and iPhone 17 before they made the Challenged Statements. The Court disagrees and finds that at the present pleading stage, Plaintiffs have shown with the requisite plausibility through their confidential witnesses, competitor statements, and analyst reports that material omissions could have been made.

### i. Confidential Witnesses

"[T]o comply with the PSLRA's particularity requirement, plaintiffs must 'reveal with particularity the source of their information.' " *Glazer*, 63 F.4th at 766 (quoting In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005)). When relying on confidential witness statements, a complaint must describe the confidential witness "with sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners*, LLC v. Digimarc Corp. 552 F.3d 981, 995 (9th Cir. 2009). Confidential witnesses may be used in two situations:

> First, if a complaint relies on a confidential witness and other factual information, the confidential witness need not reveal his sources provided the other facts provide an adequate basis for believing the defendant's statements were false. Second, if the complaint relies on a confidential witness and no other information, the complaint must describe the confidential witness with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.

*Glazer*, 63 F.4th at 767 (internal citations and quotation marks omitted). In determining whether the complaint has described the confidential witness with sufficient particularity, the court considers "the level of detail provided by the confidential witnesses, the plausibility of the allegations, the number of sources, the reliability of the sources, corroborating facts, and similar indicia of reliability." *Id*. (citation omitted).

Plaintiffs allege that given the procurement timeline two former Skyworks employees were aware of during their employment, the Contested Statements must have been made with the knowledge that Apple would be decreasing its reliance on Skyworks materials. Former Employee 1 ("FE1") worked for Skyworks from April 2015 to March 2023, was responsible for "inventory, supply planning, and program management

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                    Date: May 6, 2026

Page 6

regarding Apple and Samsung Products," and "supported all of Skyworks's program managers ("PMs") regarding all aspects of the production process, including meeting with Apple representatives." (Dkt. 59 at 10). FE1 attended meetings with Apple representatives where Apple said it wanted to prevent, when possible, any one supplier from retaining more than 50% of the business for a particular product line. *Id*. FE1 said that by at least March 2023 they knew that Apple no longer was going to be sourcing certain chip components only from Skyworks for the iPhone 16. *Id*. The Court finds that the level of detail used to describe FE1 is sufficient to establish their reliability at this stage of litigation regarding the timeline for Apple's component procurement. Even if FE1 had no contact with Griffin or Sennesael as Defendants allege, as an employee that worked with Apple the Court finds is implausible that FE1 would be privy to information about Skyworks' largest employer that its top executives would not. (Dkt. 60 at 7).

Former Skyworks Employee 2 ("FE2") "is a former employee who worked as a Senior Supply Chain Manager at Skyworks's facilities in Mexicali, Mexico from 2017 to January 2023." (Dkt 59 at 15). FE2 "was responsible for the planning and procurement of manufacturing at the Mexicali facility." *Id*. FE2 speaks to their experiences regarding Apple's product sourcing in the Mexicali facility. The Court also finds FE2 to be a reliable confidential witness given the particularity used to describe FE2 and their knowledge source.

It is clear that both FE1 and FE2 were involved in Skyworks' manufacturing process and would have thus been privy to Apple's procurement timeline to some extent. Defendants argue that FE1 and FE2 should be deemed uncredible by the Court because they left Skyworks prior to the release of the iPhones. (Dkt. 60 at 8). However, this does not mean that either former employee is not knowledgeable about the procurement process that would have been in place with Apple prior to the release of the phones.

### ii.  Competitor Statements

Plaintiffs allege that the timing of statements made by Skyworks' component competitors, Qualcomm and Broadcom, regarding their content positions with Apple corroborates a procurement timeline where Defendants would have known that the statements they were making were false. (Dkt. 66 at 10). Plaintiffs allege with enough detail that Qualcomm had reason to believe that they had taken product share away from Skyworks. When Qualcomm's CFO was asked why the Company was bullish for next year (i.e. 2024) they stated: "we already know the next 2 or 3 chips we are doing. And we expect this 10-ish percent increase in content at the minimum as we look forward." (Dkt. 59 at 18). It is possible as Defendants suggest that Qualcomm was simply making a forward-looking projection regarding its anticipated and unknown content position. (Dkt.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                              Date: May 6, 2026

Page 7

60 at 10). However, the Court cannot simply take Plaintiff's plausible material allegation to be untrue. The same is true for Broadcom's statement they won new content for the iPhone 17.

**B.      Plaintiffs do not fail to allege scienter.**

To plead scienter under the PSLRA, a complaint must allege facts giving rise to a strong inference that the defendant acted with intent to deceive, manipulate, or defraud or with deliberate recklessness. *Webb v. SolarCity Corp.*, 884 F.3d 844 (2018). The court must evaluate the allege facts holistically and determine whether the influence of scienter is cogent and at least as compelling as any opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

**i.      Facts supporting the inference**

The complaint alleges that Apple communicated final content decisions to component suppliers in the spring and early summer of the year preceding each iPhone launch. (Dkt. 59 at 50-59). FE1 knew by at least March 2023 that Apple had decided to move away from single sourcing certain iPhone 16 components from Skyworks, months before Defendants began making statements to investors. (Dkt. 59 at 40). The inference that Defendants Griffin and Sennesael knew of Apple's decision flows from their positions as CEO and CFO and the fact that Apple constituted 69% of Skyworks' total revenue. (Dkt. 59 at 27). The complaint further alleges that Defendant Griffin regularly presented to employees on which components Skyworks had won or lost in Apple's bidding process at quarterly meetings. (Dkt. 59 at 182). During a January 2024 earnings call, when analysts directly asked whether Skyworks was losing content with Apple, Defendant Griffin stated, "Nothing is really concerning on that point, and we know exactly who we are and who they are…" (Dkt. 59 at 71). In April 2024, Defendants Griffin and Sennesael confirmed that Skyworks had lost approximately 10% of its content position with their "largest customer" (Dkt. 59 at 78). When asked whether the news indicated that Apple was seeking to add more suppliers across all sockets for supplier diversity, or if it was limited to a single year and a single socket, Defendant Griffin replied, "It's one year, one socket for sure. And we have very, very good eyes on that." (Dkt. 59 at 79). In November 2024, Defendant Griffin was asked about Skyworks' business relationship with Apple and whether Skyworks could regain content in 2025 and 2026. (Dkt. 59 at 13). In response, Defendant Griffin stated that Skyworks has "a very good partnership with our largest customers" and that the "back and forth is always going our way." *Id.* Plaintiffs contend that, through early 2025, Defendants maintained that Skyworks was "poised to return to its historical average content growth of 10% at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:22-cv-01301-DOC-ADS                         Date: May 6, 2026

Page 8

Apple." (Dkt. 59 at 100). During a conference call with analysts in February 2025, Defendant Sennesael revealed that Skyworks' content share for the forthcoming iPhone 17 cycle was "expected to be down 20% to 25%." (Dkt. 59 at 104). Further, the newly incoming Skyworks CEO Brace admitted shortly after that the Company had not been "performing that well" for three years, directly contradicting what Defendants Griffin and Sennesael had told investors throughout the Class Period. (Dkt. 59 at 123). The Court finds Plaintiffs' factual allegations sufficient to support the inference that Defendants would have been in a position to know or had access to information regarding Skyworks' content losses with Apple.

    ii.    **The inference is cogent and at least as compelling as any opposing inference**

The allegations in the complaint, taken collectively, give rise to a cogent and compelling inference of scienter that is at least as strong as any opposing innocent inference. Courts must conduct a holistic review of the allegations, rather than scrutinizing each allegation in isolation, to determine whether the totality of the circumstances supports a strong inference of scienter. *Nat'l Elevator Industry Pension Fund v. VeriFone Holdings, Inc.* (*In re VeriFone Holdings, Inc. Sec. Litig.*), 704 F.3d 694 (2012), *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089 (2011), *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (2009). Defendants raise four arguments against scienter**:**

First, Defendants argue that Plaintiffs have not alleged financial motive for fraud because Defendants Griffin and Sennesael did not sell stock or otherwise financially benefit from withholding information. (Dkt. 60 at 27). The absence of a financial motive does not preclude the finding of scienter. While the lack of a plausible motive makes it less likely that a plaintiff can show a strong inference of scienter, it is not dispositive where the complaint otherwise asserts compelling and particularized facts showing fraudulent intent of deliberate recklessness. *See Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). Plaintiffs have alleged particularized facts regarding Defendants' conduct, including the timing and content of public statements and Defendants' access to internal information. Plaintiffs' allegations, when considered collectively, support an inference of scienter that is at least as compelling as any opposing inference.

Second, Defendants argue that Plaintiffs alleged timeline for when Apple completed its down selection process or when Skyworks was informed of Apple's final content decisions does not support an inference of scienter. (Dkt. 60 at 16). Plaintiffs allege that FE1 had knowledge that by at least March 2023, Apple had decided to move

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                                    Date: May 6, 2026

Page 9

away from single sourcing certain iPhone 16 chip components from Skyworks. (Dkt. 59 at 40). That is a specific factual allegation regarding the 2023 cycle from a former Skyworks employee. FE2 further corroborates the alleged timeline by confirming that iPhone component manufacturing at the Mexicali facility began in early January of the launch year. (Dkt. 59 at 59). The complaint further alleges that after manufacturers submit samples and bids to become component suppliers, Apple determines which suppliers to select and whether components will be single or dual sourced. (Dkt. 59 at 56). Apple then notifies each bidder of its decision and if a bidder is not selected, they are informed of the company chosen to supply the product. *Id*. The detailed information provided by FE1 regarding Apple's component procurement, together with the executive positions held by Defendants Griffin and Sennesael at Skyworks, supports an inference that Defendants would have been in a position to know, or had access to information regarding Apple's content decision at the time the challenged statements were made. The Court finds that Plaintiffs' allegations are sufficient at this stage to support an inference of scienter that is at least as compelling as any opposing innocent inference.

Third, Defendants argue that core operations is not adequately pled because FE1 does not allege that Defendant Griffin specifically presented on the iPhone 16 and because neither FE was positioned to know what Defendants Griffin or Sennesael specifically knew about the down selection process. (Dkt. 60 at 29). Allegations related to core operations may be used alongside other allegations that, when read together, raise a cogent and compelling inference of scienter. *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (2014). Plaintiffs specifically allege that Defendant Griffin regularly presented to Company employees at quarterly meetings, where he provided detailed information regarding specific components on which Skyworks had won or lost in the bidding process. (Dkt. 59 at 182). FE1 further alleges that that Defendant Griffin served as a primary source of company information for employees, including matters related to chipset biding and manufacturing processes, and that the weekly and monthly production meetings in which FE1 participated incorporated and built upon slides and information presented by Defendant Griffin. (Dkt. 59 at 183). Given that Defendant Griffin served as a primary source of company information, including matters related to chipset bidding and manufacturing processes, and regularly presented to Skyworks employees with detailed information on specific components for which Skyworks had won or lost in the bidding process, the record supports an inference that Defendant Griffin was well-positioned to know about component level wins and losses during the relevant period. The fact that FE1, by virtue of their position, was aware of information regarding the down-selection process further supports the inference that, given Defendant Griffin's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                           Date: May 6, 2026

Page 10

executive role, he would have had access to or knowledge of the same information. The Court finds that Plaintiffs' allegations are sufficient at this stage to support an inference of scienter that is at least as compelling as any opposing innocent inference.

Fourth, Defendants argue that the departures of Defendants Griffin and Sennesael is insufficient to signal that they knowingly made false or misleading statements. (Dkt. 60 at 29). While executive departures standing alone do not necessarily indicate knowledge of making false or misleading statements, when considered holistically with the other allegations, the departures support an inference of scienter. Throughout the class period, Defendants Griffin and Sennesael made repeated statements indicative of Skyworks' content position with Apple. (Dkt. 59 at 71, 79, 96, 98-100). In April 2024, Defendants disclosed that Skyworks' content position was expected to be down approximately 10% for the iPhone 16. (Dkt. 59 at 76-78). Despite that that disclosure, Defendants Griffin and Sennesael continued to publicly assure that Skyworks' relationship with Apple was secure and that content growth would return to historic growth. (Dkt. 59 at 96, 98-100). In February 2025, Defendants disclosed that Skyworks' content position for the iPhone 17 was expected to be down 20% to 25%. (Dkt. 59 at 104). On the same day, Defendant Griffin's resignation was announced. (Dkt. 59 at 103). Defendant Sennesael departed the following quarter. (Dkt. 59 at 19). Skyworks's new CEO, Phillip Brace, admitted shortly after joining Skyworks that the Company had not been "performing that well" the past three years, conceded that Skyworks was not "as focused as we could've been" and had become "too complacent." (Dkt. 59 at 123-126). The context and timing of the Defendants' statements, in conjunction with the timing of their departure, and the new CEO's statements supports an inference of scienter that is cogent and at least as compelling as any opposing inference.

**C.      Plaintiffs' Section 20(A) claim does not fail.**

Defendants argue that Plaintiffs offer conclusory allegations of control against executives Griffin and Sennesael, failing to establish a Section 20(a) claim. (Dkt. 60 at 22). Plaintiffs argue that the complaint establishes in detail that Defendants Griffin and Sennesael were top executives at Skyworks who shared responsibility for both important strategic decisions and the accuracy of the Company's SEC filings which they signed. (Dkt. 66 at 25). Further, Plaintiffs argue that Defendants Griffin and Sennesael were responsible for Skywork's communications with investors. *Id.* The Court agrees with Plaintiffs that as former CEO and CFO respectively, Liam Griffin and Kris Sennesael shared significant responsibility and satisfy Section 20(A) at the pleading stage.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:22-cv-01301-DOC-ADS                     Date: May 6, 2026

Page 11

### IV.    Disposition

For the reasons set forth above, the Court **DENIES** Defendants' Motion and dismisses.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                         Initials of Deputy Clerk: pd/kdu

CIVIL-GEN